# Exhibit A

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOANNE CICALA INSCORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.:1:13-cv-00712-LY |
| | § | |
| | § | |
| KIRBY McINERNEY LLP, RANDALL K. | § | |
| BERGER, DANIEL HUME, PETER S. | § | |
| LINDEN, IRA PRESS, and DAVID E. | § | |
| KOVEL, | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF PETER S. LINDEN
## IN SUPPORT OF MOTION TO TRANSFER VENUE

| | |
|---|---|
| STATE OF NEW YORK | § |
| | § |
| COUNTY OF NEW YORK | § |

1.      My name is Peter S. Linden.  I am an individual defendant in the above-captioned lawsuit, a member in good standing of the New York bar, and an equity partner of named defendant Kirby McInerney, LLP ("KMLLP"), a New York partnership and law firm.  I am over 18 years of age and am fully competent to testify to the matters stated in this affidavit.  I have personal knowledge of the facts and statements contained in this affidavit and each of them is true and correct.

2.      I anticipate that, if this case were to proceed, I would testify concerning the allegations raised in Joanne Cicala Inscore's ("Cicala") Petition.  I reside and work in the State of New York.

3.     In addition, I anticipate that the other four individual defendants also would testify regarding Cicala's allegations.  Each of the other individual defendants is a member of KMLLP and a member in good standing of the New York bar, and each practices law in New York and resides in either New York or New Jersey.

4.     Additionally, KMLLP's principal office is and at all times has been located in New York City, and all of the current partners and employees of KMLLP, including myself and all other individual defendants, work at KMLLP's offices in New York, and all of KMLLP's accounting takes place at that location.  KMLLP currently has no Texas office.

5.     If this case proceeds, it is likely the following non-party witnesses will be called to testify and/or provide documents:

      (a)     Jeffrey H. Squire, former partner at KMLLP, to provide testimony and documents relating to Cicala's partnership at KMLLP, the KMLLP partnership agreement and payments made thereunder, KMLLP's assets, et cetera.  Mr. Squire resides in New York, New York.

      (b)     Professionals at Advance Magazine Publishers, Inc. ("Advance"), KMLLP's current landlord, to testify and provide documents regarding KMLLP's lease and related expenses. Advance is located in New York, New York.

      (c)     Professionals at MP 830 Third Avenue, LLC ("MP 830"), KMLLP's former landlord, to testify and provide documents regarding KMLLP's lease and related expenses. MP830 is located in New York, New York.

      (d)     Vincent LaManna, KMLLP's former real estate broker, to testify and provide documents regarding KMLLP's leases and related expenses.  Mr. LaManna resides in Long Island, New York.

      (e)     Various current and former professionals (including but not limited to Robert Bissu, Kerry M. McDonough, Gregg Koutouvidis, and Anna Labombarda) at Citi Private Bank in New York, KMLLP's banking institution, to provide testimony relating to KMLLP's assets, expenses and various payments made from KMLLP accounts.

(f)     Ellen Stanavitch and various other professionals at EVR Professional Liability Services, LLC ("EVR"), KMLLP's professional liability insurance broker, to provide testimony and/or documents regarding KMLLP's operations. EVR is located in Lake Luzerne, New York.

(g)     Matthew Yan (at Chernoff Diamond & Co., LLC), the actuary for KMLLP's retirement plan, to provide testimony regarding KMLLP's assets and retirement plan. Mr. Yan works in Garden City, New York.

(h)     Brian Sminkey, KMLLP's retirement plan administrator, to provide testimony regarding KMLLP's retirement plan. Mr. Sminkey works in Valley Forge, Pennsylvania.

(i)     Various former KMLLP attorneys to provide testimony regarding cases handled by KMLLP, KMLLP's assets and expenses, and Cicala's tenure at KMLLP.

(j)     Marjorie E. Berman, KMLLP's employment attorney, to provide testimony or documents regarding KMLLP's employment policies and practices, including those related to partnership. Ms. Berman works in New York, New York.

(k)     Douglas Wasser, KMLLP's real estate attorney, to provide testimony or documents regarding KMLLP's lease. Mr. Wasser works in New York, New York.

(l)     Wendy Grabel, KMLLP's pension attorney, to provide testimony or documents regarding KMLLP's pension plan. Ms. Grabel works in New York, New York.

6.     In addition, it is likely that the following current KMLLP employees will be called to testify:

(a)     Roger W. KMLLP, former managing partner and current Of Counsel at KMLLP, to provide testimony and documents relating to Cicala's partnership at KMLLP, KMLLP's current and former assets, et cetera. Mr. KMLLP resides in Millbrook, New York.

(b)     Alice McInerney, former partner and current Of Counsel at KMLLP, to provide testimony and documents relating to Cicala's partnership at KMLLP, KMLLP's current and former assets, et cetera. Ms. McInerney resides in New York, New York.

(c)    Sally Telias, KMLLP's current Controller, to provide testimony and documents relating to payments made to Cicala, KMLLP's current and former assets, et cetera. Ms. Telias resides in New York, New York.

(d)    Henry Telias, current Of Counsel at KMLLP, to provide testimony relating to KMLLP's taxes. Mr. Telias resides in New York.

7.    Maintaining this lawsuit in Texas would place a significant strain on many of KMLLP's partners and employees and cause a major disruption in KMLLP's activities and operation as a law firm.

8.    Practically all of the documents relevant to Cicala's allegations in this case are located in New York, New York at KMLLP's offices or in the offices of KMLLP's accountants and bankers. It would be extremely inconvenient for the parties to transport these documents to the Western District of Texas, both in terms of cost and because many of the relevant documents are part of KMLLP's ongoing day-to-day operations in New York. In addition, the cost to Defendants of obtaining the presence of the aforementioned witnesses in the Western District of Texas would be significant, including transportation and lodging. The trouble and cost would be significantly reduced if this case were transferred to the Southern District of New York, where these witnesses reside and where many of the documents are located.

9.    All partnership property sought by Cicala by her Petition is currently located in New York, New York.

10.    Other than Cicala, I am aware of no relevant witnesses or documents in the State of Texas.

11.    Cicala worked and resided in New York until 2002. Thereafter, Ms. Cicala continued to maintain an office in KMLLP's New York office—and traveled to that office several times a year—until her resignation in February 2013.

12.     Attached as Exhibit 1 to this Affidavit are relevant, redacted pages of the Kirby McInerney & Squire, LLP Restated Partnership Agreement (the "KMLLP Partnership Agreement").   The then members of KMLLP, Roger W. KMLLP, Peter S. Linden, Alice McInerney, Ira M. Press, and Jeffrey H. Squire, entered into the KMLLP Partnership Agreement in January 1999. At all relevant times thereafter, KMLLP partners, including Cicala herself until very shortly before her filing of this suit, have acknowledged that the Partnership Agreement governs the relationship as members of KMLLP, and KMLLP's business, operations and affairs have been managed and conducted pursuant to the terms of the Partnership Agreement.

13.     Paragraph 38 of the KMLLP Partnership Agreement provides that the agreement is to be construed and enforced under New York law and that all controversies related to the partnership shall be litigated in New York, New York:

38.     Governing Law. This Agreement is made and is to be performed in the State of New York and shall be construed and enforced in accordance with the internal laws of the State of New York applicable to agreements made and to be performed in said State. Any controversy or claim arising out of or relating to this Agreement, or any alleged breach hereof, or arising out of or relating to the Partners and the Partnership, shall be tried and litigated only in the federal or state courts located in the City and State of New York, New York. Each of the Partners and the Partnership waives, to the extent permitted under applicable law, any right each may have to assert the doctrine of forum non conveniens or to object to venue or to a court's lack of personal jurisdiction to the extent any proceeding is brought in accordance with this Section 38.

14.     Cicala became a partner at KMLLP in January 2002 and resigned in February 2013.

15.     In January 2002, Cicala was offered and accepted membership in KMLLP pursuant to the KMLLP Partnership Agreement. By memorandum dated January 22, 2002, the firm's managing partners informed all other partners, including Cicala and myself, that Cicala had been admitted as a partner pursuant to the KMLLP Partnership Agreement. Cicala accepted

membership as a partner pursuant to the KMLLP Partnership Agreement without qualification or reservation.

16.    During her tenure as a KMLLP partner, Cicala claimed benefits—both monetary and otherwise—under the KMLLP Partnership Agreement. Specifically, and by way of example only, Cicala accepted the assignment to her by KMLLP's management of annual partnership percentages, the allocation to her of partnership interests previously assigned to former partners, all resulting compensation, distributions and other benefits, and eventually her status and role as a member of KMLLP's Management Committee.

17.    As a direct result of the application of the KMLLP Partnership Agreement's provisions concerning the rights of withdrawn partners, and its provisions governing the Managing Partner's ability to reduce the ownership percentages of partners, Cicala received substantial funds that she otherwise would not have received. For example, the KMLLP Partnership Agreement reduces the share of firm assets to which withdrawn partners are entitled. The KMLLP Partnership Agreement also provides that individual partners' ownership interests can be reduced (up to a specified amount), without compensation, at the discretion of the Managing Partner. Absent such provisions, Cicala's income could have been decreased substantially. However, Cicala without exception accepted these financial benefits resulting from the application of the KMLLP Partnership Agreement.

18.    Cicala also acknowledged both orally and in writing at various times throughout her tenure as a KMLLP partner, and as a member of its Management Committee, that the KMLLP Partnership Agreement has governed the partnership's management, operations, and affairs and was binding on all KMLLP partners, including Cicala herself.

19.    By letter dated February 5, 2013, Cicala gave KMLLP and its partners notice of

her withdrawal from the partnership pursuant to Section 18(a)(i) of the KMLLP Partnership Agreement.  In subsequent correspondence, Cicala confirmed that she withdrew from KMLLP pursuant to Sections 18(a)(i) of the Partnership Agreement and would be subject to the related provisions of section 19 of that agreement governing the amounts payable to withdrawn partners of KMLLP.  Per her request, we  provided Cicala with information to enable discussions regarding any amounts due under the Partnership Agreement.

20.     Cicala did not indicate to me or, upon information and belief, anyone else that she believed the KMLLP Partnership Agreement did not apply until months after she withdrew as a KMLLP partner.

21.     On August 6, 2013, Cicala, through her counsel, sent me and the other defendants a letter regarding amounts she claimed were owed to her.  In the letter, Cicala contended that the Partnership Agreement and its partner withdrawal provisions, which she previously asserted as governing her withdrawal, did not apply to her withdrawal.  She proposed that KMLLP and all of the individual defendants, including myself, join her in efforts to negotiate a settlement of the controversy without litigation.  Prior to the deadline indicated in the letter, on August 13, 2013, our counsel unconditionally accepted the offer to engage in efforts to settle the controversy without litigation.   In response and despite our agreement to join in settlement negotiations, Cicala filed a lawsuit in Hays County, Texas the next day.

22.     On August 14, 2013, the defendants in this action, including myself, caused to be filed in New York state court the Summons and Notice attached hereto as Exhibit 2.  On August 19, we further filed the Complaint attached as Exhibit 3, seeking declaratory and other relief.

23.      I make the above statements under penalty of perjury.

_____

PETER S. LINDEN

# Exhibit 1

*Certified to be a Millbrook S.D. box*

# KIRBY MCINERNEY & SQUIRE, LLP

## RESTATED PARTNERSHIP AGREEMENT

**Effective January 1, 1999**





38.    <u>Governing Law</u>.  This Agreement is made and is to be performed in the State of New York and shall be construed and enforced in accordance with the internal laws of the State of New York applicable to agreements made and to be performed in said State.  Any controversy or claim arising out of or relating to this Agreement, or any alleged breach hereof, or arising out of or relating to the Partners and the Partnership, shall be tried and litigated only in the federal or state courts located in the City and State of New York, New York.  Each of the Partners and the Partnership waives, to the extent permitted under applicable law, any right each may have to assert the doctrine of forum non conveniens or to object to venue or to a court's lack of personal jurisdiction to the extent any proceeding is brought in accordance with this Section 38.



206972.10                                        28

# Exhibit 2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

KIRBY McINERNEY LLP, RANDALL K.
BERGER, DANIEL HUME, PETER S.
LINDEN, IRA M. PRESS, AND DAVID E.
KOVEL,

                    Plaintiffs,

          v.

JOANNE M. CICALA, aka JOANNE
CICALA INSCORE,

                    Defendant.

Index No. _____

**SUMMONS WITH NOTICE**

**TO THE ABOVE NAMED DEFENDANT:**

          **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** and required
to appear in this action by serving upon plaintiffs' attorney, at the address stated below, a notice
of appearance or demand for a complaint.

          If this summons was personally delivered upon you in the State of New York, the notice
of appearance or demand for a complaint must be served within twenty (20) days after such
service of the summons, exclusive of the day of service, or within thirty (30) days after service of
the summons is complete if this summons is not personally delivered to you within the State of
New York.

          The nature of this action and the relief sought are set forth in the Notice below.

          If you do not serve a notice of appearance or demand for a complaint within the
applicable time limitation stated above, a judgment may be entered against you by default for the
relief set forth in the Notice below, plus the costs and disbursements of this action.

New York County is designated as the venue because: (1) Plaintiff Kirby McInerney LLP has its principal office in New York County; and (2) the Kirby McInerney & Squire, LLP Restated Partnership Agreement made as of January 1, 1999, provides for venue in New York County.

Defendant's Address:

5500 McGregor Lane
Dripping Springs, Texas 78620

Dated: New York, New York
      August 14, 2013                Respectfully submitted,

                             By:     /s/ *Jeremy R. Lacks*

                                   **MANATT, PHELPS & PHILLIPS**
                                   Eli R. Mattioli
                                   Jeremy R. Lacks
                                   7 Times Square
                                   New York, New York 10036
                                   Tel:    212.790.4500
                                   Fax:   212.790.4545

                                   ***Counsel for Plaintiffs***

**NOTICE**:   The nature of this action is:  an action for a declaratory judgment determining the rights, interests and obligations of the parties under and with respect to the Kirby McInerney & Squire, LLP Restated Partnership Agreement made as of January 1, 1999.

      The relief sought is: a declaratory judgment that the Kirby McInerney & Squire, LLP Restated Partnership Agreement made as of January 1, 1999 is binding on plaintiffs and defendant and governs any and all amounts payable to defendant as a withdrawn partner in Kirby McInerney LLP (formerly known as Kirby McInerney & Squire, LLP), defendant having been offered and accepted membership as a partner in Kirby McInerney LLP pursuant to that agreement in January 2002, and having thereafter received and accepted the benefits of membership as a partner in Kirby McInerney LLP under that agreement until defendant withdrew from Kirby McInerney LLP pursuant to Section 18(a)(i) of the agreement in February 2013; and for such other and further relief with respect to the foregoing matters as may be just and proper.

# Exhibit 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------ x

KIRBY McINERNEY LLP, RANDALL K.       :   Index No.: 652860/2013
BERGER, DANIEL HUME, PETER S.
LINDEN, IRA M. PRESS and DAVID E. KOVEL,   :

                                 Plaintiffs,   :   **COMPLAINT**

      -against-   :

JOANNE M. CICALA, a/k/a JOANNE
CICALA INSCORE,   :

                           Defendant.   :

                                         :

------------------------------------------------------------------ x

       Plaintiffs, by their attorneys, Manatt, Phelps & Phillips, LLP, for their Complaint in this

action, allege as follows:

       1.     This action seeks a declaratory judgment to resolve a controversy as to whether

defendant Joanne M. Cicala ("Cicala"), a former partner in the law firm of plaintiff Kirby

McInerney LLP ("KMLLP"), is bound by the partner withdrawal provisions of the partnership

agreement pursuant to which she was offered and accepted her membership as a partner in the

firm in January 2002. Cicala thereafter repeatedly acknowledged her awareness and acceptance

of the agreement in her role as a KMLLP partner and member of its Management Committee,

and she specifically invoked the agreement's partner withdrawal provisions, including those

governing the amounts payable to withdrawn partners, in notifying KMLLP and its other

members—the individual plaintiffs herein—of her withdrawal from the firm effective February

1, 2013. Cicala has since disputed the applicability to her of the partner withdrawal provisions

and the Partnership Agreement itself, which she previously invoked and acknowledged as

governing the amounts payable to her as a withdrawn partner, demanding instead the greater

share of firm assets she would entitled to upon partnership dissolution. As alleged more fully

below, Cicala's position is without merit as a matter of law, and plaintiffs dispute Cicala's

position and seek declaratory relief to resolve the parties' controversy with respect to the

foregoing matters.

2.     KMLLP, formerly known as Kirby McInerney & Squire, LLP, is a registered

limited liability partnership organized and existing under the law of the State of New York,

engaged at all times in the practice of law, and having its principal office at 825 Third Avenue,

New York, New York.

3.     Each of the individual plaintiffs herein, Randall K. Berger, Daniel Hume, David

E. Kovel, Peter S. Linden and Ira M. Press, is licensed to practice law in the State of New York

and is a member of KMLLP.

4.     Upon information and belief, Cicala is licensed to practice law in the State of

New York.  As previously alleged, Cicala is a former member of KMLLP and its Management

Committee.

5.     In or about January 1999, the then members of KMLLP, Roger W. Kirby, Peter S.

Linden, Alice McInerney, Ira M. Press and Jeffrey H. Squire, entered into the Kirby McInerney

& Squire, LLP Restated Partnership Agreement effective as of January 1, 1999 (the "Partnership

Agreement"), which expressly provides in Section 9 that "[t]he Partnership shall continue for an

indefinite term."

6.     At all relevant times thereafter to date, KMLLP's partners, including Cicala and

other newly admitted partners, have acknowledged that the Partnership Agreement governs their

relationship as members of KMLLP, and KMLLP's business, operations and affairs have been

managed and conducted pursuant to the terms of the Partnership Agreement, including, without

2

limitation, its provisions with respect to the determination of partners' profits and losses,

partners' compensation, the fixing of partners' capital contributions, the admission of new

partners, the withdrawal and removal of partners, the determination of amounts payable to

withdrawn partners, and the reallocation to continuing partners of withdrawn or removed

partners' interests in KMLLP.

       7.     In January 2002, Cicala was offered and accepted membership in KMLLP

pursuant to the Partnership Agreement.  By memorandum dated January 22, 2002, Roger W.

Kirby, the firm's Managing Partner under the agreement, together with its other named partners,

Alice McInerney and Jeffrey H. Squire, informed all other partners and Cicala that "[p]ursuant to

the Restated Partnership Agreement effective as of January 1, 1999, Joanne M. Cicala is

admitted as a partner . . ." and that the KMLLP partners' 2002 Annual Percentages, including the

partnership percentage interest assigned to Cicala, were as set forth in that memorandum.

KMLLP's management so informed Cicala and other partners of their Annual Percentages in

subsequent years as well.

       8.     Cicala accepted membership as a partner in KMLLP, as thus offered to her

pursuant to the Partnership Agreement, without qualification or reservation.  Cicala thereafter

similarly accepted the benefits of such membership that were granted to her pursuant to the

Partnership Agreement, including the assignment to her by KMLLP's management of annual

partnership percentages, the allocation to her of partnership interests previously assigned to

former partners, all resulting compensation, distributions and other benefits, and eventually her

status and role as a member of KMLLP's Management Committee.  Moreover, as a direct result

of the application of the Partnership Agreement's provisions concerning the rights of withdrawn

partners, and its provisions governing the Managing Partner's ability to reduce the ownership

percentages of partners, Cicala received millions of dollars that she otherwise would not have received.  Absent the Partnership Agreement's applicability, every time a partner's percentage was reduced, and every time a partner left the firm, that partner could have demanded payment equal to the amount due upon a dissolution of the firm and the liquidation of all firm assets.  The Partnership Agreement, however, reduces the share of firm assets to which withdrawn partners are entitled.  The Partnership Agreement also provides that individual partners' ownership interests can be reduced (up to a specified amount), without compensation, at the discretion of the Managing Partner.  The effect is to leave more assets in the firm to fund its operation or for distribution to the other partners.  Over the years, Cicala's income was increased by millions of dollars as a result of the implementation of these provisions of the Partnership Agreement with respect to withdrawn partners and partners whose equity percentages were reduced by the Managing Partner.  In each instance, Cicala accepted the financial benefits thus resulting from the application of the Partnership Agreement to her and all other partners.

9.      Consistent with plaintiffs' and Cicala's adherence to the Partnership Agreement, Cicala acknowledged both orally and in writing at various times throughout her tenure as a partner in KMLLP, and as a member of its Management Committee, that the Partnership Agreement has governed the partnership's management, operations and affairs and was binding on all partners in KMLLP, including Cicala herself.  For example, an email sent by Cicala in 2008 references the Partnership Agreement, indicates her receipt of a copy of that document, and reflects her understanding that it was an "existing agreement" and "our most recent P-ship agreement."  Similarly, an email sent by Cicala in April 2011 describes the Partnership Agreement as "controlling" and admits "reviewing" it.  Moreover, in September 2011, Cicala sent emails approving KMLLP's entering into an agreement with a former partner that

acknowledged and confirmed that KMLLP is "subject to" the Partnership Agreement. And an email sent by Cicala in 2012 makes similar references to the Partnership Agreement and states that the manner in which KMLLP had paid a former partner on account of post-withdrawal fee awards was "consistent with the partnership agreement."

10.     Cicala further acknowledged her awareness and acceptance of the Partnership Agreement as binding on her as well as KMLLP's other partners in connection with her withdrawal from the firm pursuant to the provisions set forth in Section 18 and 19 that govern partner withdrawal and the amounts payable to withdrawn partners. By letter dated February 5, 2013, Cicala gave KMLLP and its other partners notice of her withdrawal from the partnership effective March 7, 2013, pursuant to Section 18(a)(i) of the Partnership Agreement. That provision states in part:

> Any partner may withdraw from the Partnership upon at least thirty (30) days' prior written notice to the Partnership and the other Partners. . . . Such notice shall state whether the withdrawing Partner intends to continue in active practice, become a Partner in another partnership in the community, open a single practice in the community or relocate.

In subsequent correspondence, Cicala informed KMLLP's other partners that she would "roll [the] withdrawal date" forward, thus raising a question as to the effective date of Cicala's withdrawal pursuant to Section 18(a)(i) of the Partnership Agreement and prompting KMLLP's other partners to invoke Section 18(a)(ii) in order to require her withdrawal without cause effective March 31, 2013. Further demonstrating her awareness and acceptance of the Partnership Agreement as binding on her, Cicala responded to the other partners by letter dated March 6, 2013, that "I withdrew on February 5, 2013 pursuant to paragraph 18(a)(i) and thus, if we are to be technical about it, the 'effective date of withdrawal' will be determined under that section." And by email dated March 14, 2013, Cicala reiterated her position, informing

KMLLP's other partners that Sections 18 and 19 of the agreement governed her withdrawal, as

follows:

> . . . Without belaboring this or being overly technical, let me explain where I'm coming from.
>
> Once we had our exchange over the effective date, I examined the partnership agreement carefully in that regard. I'm not 100% clear on what the original purpose was, but I feel that the "effective date of withdrawal" is a term of art in the partnership agreement, created primarily for purposes of the Section 19 financial provisions, and does not refer to the "actual" date of separation.
>
> . . . For purposes of Sections 18 and 19 and any other place in the document that talks about "effective date of withdrawal," I agree that that date should be Feb. 1, as provided in section 18(a)(i). I am happy with that date functioning as an "actual date of termination" for purposes of termination of my equity partnership status.

11.     With reference to a partner's withdrawal from KMLLP pursuant to Sections

18(a)(i) or 18(a)(ii)of the Partnership Agreement, Section 18(a)(iv) provides that "[a]ny such

withdrawal shall be subject to the covenants, obligations and related provisions set forth in this

Agreement." As Cicala acknowledged in her email dated March 14, 2013, such covenants,

obligations and provisions include those contained in Sections 19 of the agreement with respect

to the amounts payable to a withdrawn partner. Such covenants, obligations and provisions also

include those contained in Section 20 of the agreement with respect to the manner and rate of

payment of such amounts.

12.     In light of Cicala's withdrawal from KMLLP pursuant to Section 18 of the

Partnership Agreement, KMLLP's other partners informed Cicala that they would cause the firm

to make payment to her of all amounts becoming due to her under the related provisions

contained in Sections 19 and 20 of the agreement. Cicala, however, in a material breach of her

obligations under the Partnership Agreement sufficient to warrant removal for cause, thereafter

refused such payment and has since demanded through counsel immediate payment of the amount to which she would be entitled upon a dissolution of KMLLP and the liquidation of all partnership assets—without application of the Partnership Agreement's withdrawal provisions which Cicala herself had previously and repeatedly asserted as applicable to her.

13.      Upon information and belief, it is Cicala's position that she may avoid plaintiffs' application to her of the Partnership Agreement's withdrawal provisions on the theory that she did not sign the agreement or a note or memorandum thereof sufficient to satisfy the Statute of Frauds, N.Y. General Obligations Law § 5-701, or Sections 24 and 33 of the agreement.  Section 24 provides that "[e]ach new Partner shall become bound by and entitled to the benefit of all the provisions of this Agreement as of the effective date of his admission, subject to his execution of a counterpart copy of this Agreement or a separate document acknowledging receipt of a copy hereof and agreeing to be bound hereby."  Section 33 permitted the original signatories—Roger W. Kirby, Peter S. Linden, Alice McInerney, Ira M. Press and Jeffrey H. Squire—to execute the agreement "simultaneously in one or more counterparts" in 1999.

14.      Plaintiffs contend that Cicala's position is without merit in all respects.  *First*, the parties' course of conduct, including, without limitation, numerous Cicala writings, conclusively establishes that the Partnership Agreement governs the affairs of KMLLP and is binding on Cicala as well as all other partners.  *Second*, the Statute of Frauds does not apply to partnerships created for an indefinite term and thus has no application to KMLLP.  Even if that were not so, Cicala's letters and emails together with the agreement itself satisfy the requirements of N.Y. General Obligations Law § 5-701 with respect to Cicala.  *Third*, the same letters and emails evidence that Cicala has repeatedly "acknowledge[ed] receipt of a copy" of the Partnership Agreement and "agree[d] to be bound [t]hereby," thus satisfying the requirements of Section 24

of the agreement and estopping Cicala from challenging the agreement's applicability to her. *Fourth*, Cicala is estopped from denying the applicability of the Partnership Agreement by reason of her receipt of material financial benefits resulting from the parties' application of the agreement's terms. *Fifth*, the sole basis for Cicala's becoming a partner in KMLLP was the firm's offer and her acceptance of membership pursuant to the Partnership Agreement. Thus, unless Cicala is found to be bound by the agreement, the Court should determine and declare that she did not become a partner in KMLLP at all, and that she may not claim that status or any amounts due by reason of her purported withdrawal from KMLLP. *Sixth*, Section 33 of the agreement pertains to the document's original execution in 1999 and by its terms is inapplicable to Cicala and others admitted as KMLLP partners in subsequent years.

15.    A present, actual and justiciable controversy therefore exists between plaintiffs and Cicala with respect to the respective rights, interests and obligations of the parties under and with respect to the Partnership Agreement for which a declaratory judgment as provided in Section 3001 of the New York Civil Practice Law & Rules should be granted.

WHEREFORE, plaintiffs demand judgment as follows:

(i)    Adjudging and declaring that defendant became a partner in KMLLP pursuant to the Partnership Agreement and that the agreement is binding on both plaintiffs and defendant;

(ii)    Adjudging and declaring that defendant effectively withdrew from KMLLP by notice dated February 5, 2013 pursuant to Section 18(a)(i) of the Partnership Agreement, and that defendant's withdrawal is therefore governed by the provisions contained in Section 18(a)(i) of the agreement; or alternatively, should defendant's withdrawal from KMLLP by notice dated February 5, 2013 be determined ineffective, adjudging and declaring that defendant is deemed to have withdrawn from KMLLP by vote and approval of KMLLP's other partners pursuant to

Section 18(a)(ii) of the agreement, and that defendant's withdrawal is therefore governed by the provisions contained in Section 18(a)(ii) of the agreement;

(iii)     Adjudging and declaring that the related provisions of Sections 19 and 20 of the Partnership Agreement govern the amounts, manner and rate of payments to which defendant is entitled by reason of her withdrawal from KMLLP pursuant to Section 18(a);

(iv)     In the alternative, if defendant is found not to have ratified the Partnership Agreement, or the agreement is otherwise found unenforceable as to defendant, adjudging and declaring that defendant has not accepted and satisfied the terms and conditions on which she was offered membership in KMLLP and is not entitled to the rights, benefits and protections of a partner in KMLLP or any amount by reason of her purported withdrawal from the firm;

(v)     Determining and resolving any and all other disputes between the parties with respect to foregoing matters; and

(vi)     Granting such other and further relief as the Court may deem just and proper together with the costs and disbursements of this action.

Dated: New York, New York
        August 19, 2013

Respectfully submitted,

By: _____

**MANATT, PHELPS & PHILLIPS**
Eli R. Mattioli
Amy T. Sheehan
Jeremy R. Lacks
7 Times Square
New York, New York 10036
Tel:    212.790.4500
Fax:   212.790.4545

Counsel for Plaintiffs

9